CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 16 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HOLLY P. NEWELL, | ) |
| | ) Civil Action No. 7:15CV00310 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) Hon. Glen E. Conrad |
| AMERICAN INSURANCE | ) Chief United States District Judge |
| ADMINISTRATORS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

Plaintiff Holly P. Newell filed this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, against American Insurance Administrators, LLC ("AIA") and AmeriLife and Health Services of the Virginias, LLC ("AmeriLife"). The case is presently before the court on the defendants' motion to compel arbitration. For the following reasons, the court will grant the defendants' motion.

### Background

In January of 2014, Newell began soliciting applications for insurance on behalf of AmeriLife. Newell entered into an Independent Agent Agreement (the "Agreement"), which governed AmeriLife's obligations to pay commissions to Newell for the policies she sold. The Agreement also obligated Newell to repay any commissions and service fees she received for a policy or annuity contract that was canceled, reduced, or rescinded by AmeriLife or the applicant.[1] Upon the termination of the Agreement, Newell was required to pay "any negative bond account balance or other charges . . . within ten (10) days of demand." Agreement ¶ 10.

---

[1] These commissions and fees were referred to in the Agreement as "charge backs." See Agreement ¶ 10.

The Agreement also contained an arbitration clause, which provided, in pertinent part, as follows:

> If the parties to the Agreement do not voluntarily settle any dispute within sixty (60) calendar days after the initiation of a negotiation, then all claims, (with the exception of claims arising out of Paragraphs 10 or 12), arising out of or relating to this Agreement and the transactions contemplated hereunder to which the Agreement relates, including any amendment or extension thereof and also including any breach, termination, interpretation, validity or enforcement thereof, shall be resolved by arbitration in accordance with the procedures of the American Arbitration Association ("AAA"). The arbitration shall be held not later than ninety (90) days after demand for same. The arbitration shall be conducted by a panel of three arbitrators skilled in the business, legal and technical aspects of this Agreement . . . . The arbitrators are not empowered to award punitive damages. The arbitration award shall be final and binding upon the parties to the arbitration and judgment thereon may be entered in any court having jurisdiction . . . . The parties agree the arbitration shall be held in Pinellas County, Florida. Nothing herein contained shall in any way deprive either party of its right to seek a temporary restraining order, preliminary or permanent injunction or other equitable relief in a court of competent jurisdiction. If the Agency prevails in any court proceedings or arbitration against you, you agree to pay all costs reasonably expended by the Agency, including reasonable attorney's fees. Any dispute, however, that arises out of Paragraphs 10 and 12 of this Agreement shall not be submitted to arbitration.

Id. at ¶ 25.

In September of 2014, Newell and AmeriLife terminated the Agreement. Thereafter, AmeriLife claimed that Newell owed the company $4,741.81 for her outstanding negative bond balance and advance balance for charge backs on canceled or lapsed policies. AmeriLife and/or AIA reported the outstanding debt to Vector One Operations, LLC, which operates Debit-Check.com, LLC ("Debit-Check"), and it was posted to Debit-Check's online database of commission-related debit balances. Newell subsequently disputed the database posting, which resulted in Vector One requesting that AmeriLife and/or AIA provide evidence to support its debit balance claim. After Newell submitted documents which revealed inaccuracies in the evidence

2

produced by AmeriLife and/or AIA, Vector One and Debit-Check removed the posting from the Debit-Check database.

On June 8, 2015, Newell filed the instant action against AmeriLife and AIA. In her amended complaint, filed on September 2, 2015, Newell claims that AmeriLife and AIA violated the FCRA by providing inaccurate information to Debit-Check. She seeks to recover actual damages, punitive damages, and attorney's fees.

On October 5, 2015, AmeriLife and AIA filed the instant motion to compel arbitration of the claims asserted under the FCRA.[2] The motion has been fully briefed and was argued on January 14, 2016. It is now ripe for review.

## Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the rights and responsibilities of the parties with respect to an arbitration agreement. Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The Supreme Court of the United States has interpreted the FAA to reflect "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp., 460 U.S. at 24. The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

---

[2] In seeking to recover for alleged violations of the FCRA, the plaintiff specifically cites to 15 U.S.C. § 1681s-2(a), which prohibits anyone from furnishing information to a consumer reporting agency that the person knows is inaccurate. The court notes, however, that the "FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)," which imposes duties on furnishers of information upon notice of a dispute with regard to the accuracy of information provided to a consumer reporting agency. Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 149 (4th Cir. 2008) (citing 15 U.S.C. § 1681s-2(c)). Because the defendants seek to compel arbitration of the plaintiff's claims and expressly "preserve the right to assert any matter or defense available to them under Rule 12 of the Federal Rules of Civil Procedure," Defs.' Br. in Supp. of Mot. 2, the court will limit its review to the issue of arbitration and refrain from considering whether the amended complaint contains sufficient facts to state a plausible claim for relief under the FCRA.

3

in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

The United States Court of Appeals for the Fourth Circuit has held that a party can compel arbitration under the FAA if it establishes four elements: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the defendant to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (internal citation and quotation marks omitted). In this case, Newell contests the second element, arguing that her claims fall outside the scope of the Agreement's arbitration clause. Newell alternatively argues that the defendants waived the right to enforce the arbitration clause by filing suit against her in Florida. For the following reasons, the court concludes that both arguments are without merit.

I. **Scope of the Arbitration Clause**

The court's evaluation of the Agreement's arbitration clause is guided by the "federal policy favoring arbitration." Id. at 500. The court must construe the arbitration clause broadly, resolving any "ambiguities as to [its] scope . . . in favor of arbitration." Id.; see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (emphasizing that "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration"). Stated differently, the court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir.

4

1996) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

The arbitration clause at issue extends to "all claims . . . arising out of or relating to" the Agreement and the transactions contemplated therein, except for claims arising out of Paragraph 10 or 12. The Fourth Circuit has recognized that the "arising out of or relating to" clause is a broad one, "capable of an expansive reach." Am. Recovery Corp., 96 F.3d at 93 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967)). Such a formulation "does not limit arbitration to the literal interpretation or performance of the contract." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (interpreting an arbitration clause covering all disputes "arising in connection" with the agreement). Instead, "[it] embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." Id.

Applying these principles, the court concludes that the arbitration clause extends to Newell's claims under the FCRA. In her amended complaint, Newell claims that the defendants provided inaccurate information to Debit-Check regarding charge backs allegedly owed to AmeriLife upon the termination of the Agreement. The Agreement was the source of the alleged debt and Newel's payment obligations. Consequently, the court agrees with the defendants that this dispute is sufficiently related to the Agreement to bring it within the scope of the Agreement's arbitration clause.

In response to the pending motion, Newell emphasizes that her claims are based on actions which occurred after the Agreement was terminated. However, the Agreement specifically provides that the arbitration clause and other enumerated provisions "shall survive the termination" of the Agreement. Agreement ¶ 29. Thus, the mere fact that Newell's claims are

5

based on conduct that post-dated the termination of the Agreement does not preclude the defendants from establishing that the claims are related to the agreement and, thus, fall within the scope of the arbitration clause. See Municipal Energy Agency v. Big Rivers Electric Corp., 804 F.2d 338, 343 (5th Cir. 1986) ("[Plaintiff's] claim that the arbitration clause terminated when the rest of the contract allegedly terminated is contradicted by the express language of the arbitration clause, which provides that 'this provision shall survive the termination of this agreement.'"). Likewise, the mere fact that an arbitrator would not be authorized to award punitive damages does not preclude the court from granting the pending motion. The Supreme Court has made clear that "when a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to compel arbitration of pendant arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." KPMG LLP v. Cocchi, 565 U.S. ___, 132 S. Ct. 23, 26 (2011).

To the extent Newell alternatively argues that the defendants waived the right to enforce the arbitration clause by filing suit against her in Florida, the court disagrees. In the Florida lawsuit, the defendants seek to collect the debts allegedly owed upon the termination of the Agreement. See Pl.'s Br. in Opp'n 3 ("The Defendants have filed a lawsuit to collect the allegedly unreimbursed commissions and expenses in Florida without invoking the arbitration clause of the agreement."). Under the plain terms of the Agreement, claims to collect debts owed upon the Agreement's termination are excluded from the arbitration requirement. See Agreement ¶¶ 10, 12 & 25. Indeed, the Agreement provides that such claims "shall not be submitted to arbitration." Id. at ¶ 25. In any event, because the claims asserted in the Florida case are distinct, both legally and factually, from Newell's claims under the FCRA, the litigation surrounding those claims cannot support a finding that the defendants waived the right to arbitrate the claims asserted

6

in the instant action. MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 250 (4th Cir. 2001); see also Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir. 1997) ("[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.").

## Conclusion

For the reasons stated, the court will grant the defendants' motion to compel arbitration. This action will be stayed pending the outcome of the arbitration proceedings. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 16th day of February, 2016.

/s/ Glen Conrad
Chief United States District Judge